UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IRON WORKERS NATIONAL PENSION
PLAN, *et al.*,

    *Plaintiffs*,

v.

SAMUEL GROSSI & SONS, INC.,

    *Defendant*.

No. 20-cv-1204 (DLF)

## MEMORANDUM OPINION

Before the Court is the plaintiffs' Motion for Partial Default Judgment. Dkt 8. For the reasons that follow, the Court will grant the motion.

**I.    BACKGROUND**

The plaintiffs, the Iron Workers National Pension Plan and related parties, bring this suit under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132, 1145. The plaintiffs had entered into collective bargaining agreements and trust agreements with the defendant, employer Samuel Grossi & Sons. Compl. ¶ 24, Dkt. 1.[1] The plaintiffs allege that Samuel Grossi & Sons failed to meet its obligations under those agreements, *id.*, and seek damages for delinquent contributions and dues remissions as well as an accounting of Samuel Grossi & Sons' corporate books and records. *See generally* Compl.

---

[1] On a motion for default judgment following the entry of default, courts construe the well-pleaded allegations of the complaint as admitted. *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 68 (D.D.C. 2011).

The plaintiffs filed their complaint on May 8, 2020.  *Id.*  Samuel Grossi & Sons was served with the complaint and summons on May 15, 2020.  Proof of Service, Dkt. 3-1.  Because it did not answer or otherwise respond to the complaint within the time period required by Federal Rule of Civil Procedure 12, the plaintiffs requested an entry of default.  Dkt. 5.  The plaintiffs also delivered a copy of their request for default to Samuel Grossi & Sons.  Dkt. 6.  The Clerk of Court then entered default on August 10, 2020.  Dkt. 7.  On August 27, 2020, the plaintiffs moved this Court to enter a partial default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure.  Dkt. 8.  The plaintiffs again delivered a copy of their motion to Samuel Grossi & Sons.  Proof of Service, Dkt. 9.  The motion is now ripe for review.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure empower district courts to enter default judgment against a defendant who fails to defend its case.  Fed. R. Civ. P. 55(b)(2); *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980).  Although courts generally favor resolving disputes on their merits, default judgments are appropriate "when the adversary process has been halted because of an essentially unresponsive party."  *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quotation marks omitted).

Obtaining a default judgment is a two-step process which "allows the defendant the opportunity to move the court to set aside the default before the court enters default judgment."  *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 240 n.1 (D.D.C. 2007).  First, the plaintiff must request that the Clerk of Court enter default against a party who has failed to plead or otherwise defend.  Fed. R. Civ. P. 55(a).  The Clerk's entry of default establishes the defendant's liability for the well-pleaded allegations in the complaint.  *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014).  Second, the

plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b). At that point, the plaintiff "must prove his entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (internal quotation marks and alterations omitted). "[T]he defendant's default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief." *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008) (quoting *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005)).

When ruling on a motion for default judgment, a court "is required to make an independent determination of the sum to be awarded." *Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009) (internal quotation marks omitted). In that inquiry, the court has "considerable latitude." *Ventura*, 134 F. Supp. 3d at 103 (internal quotation marks omitted). The court may conduct a hearing to determine damages, Fed. R. Civ. P. 55(b)(2), but is not required to do so "as long as it ensures that there is a basis for the damages specified in the default judgment," *Ventura*, 134 F. Supp. 3d at 103 (internal quotation marks and alterations omitted).

### III.   ANALYSIS

Due to the Clerk's entry of default in this case, the defendants are deemed liable for the well-pleaded allegations in the complaint, *Providence Constr.*, 304 F.R.D. at 35, including the allegations that "Samuel Grossi & Sons breached the [collective bargaining agreement], in violation of § 515 of ERISA, 29 U.S.C. § 1145, and breached the described Plan and Trust Agreements." Compl. ¶ 24. With liability established, the Court must determine the amount owed by the defendants.

"ERISA provides that the court, after granting judgment in favor of a multiemployer plan, must award the amount of unpaid contributions, the interest on unpaid contributions, reasonable attorney's fees and costs and other relief the court deems appropriate." *Carpenters*, 498 F. Supp. 2d at 241 (citing 29 U.S.C. § 1132(g)(2)). "The unpaid contributions, interest, and liquidated damages generally are considered sums certain pursuant to the calculations mandated in ERISA and the parties' agreements." *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 70 (D.D.C. 2002) (internal quotation marks omitted).

The plaintiffs itemize these sums as follows:

- Delinquent contributions: $493,430.68
- Attorney's fees: $12,425.00
- Other legal costs: $1,014.60
- Accounting costs: $2,151.75
- Total:  $509,022.03

Pls.' Mem. in Supp. at 3, Dkt. 8-1.

Samuel Grossi & Sons was required, pursuant to the agreements between the parties, to make contributions to the pension fund based on the number of hours worked by bargaining unit employees. Compl. ¶ 13. In particular, it was required to contribute $2.85 per hour worked from August 1, 2017 to August 1, 2018, *id.* ¶ 14; *id.* Exh. A, $2.95 per hour worked from August 1, 2018 through August 1, 2019, *id.* ¶ 15; *id.* Exh. B, and $3.00 per hour worked from August 1, 2019 to August 1, 2020. *Id.* ¶ 15. Despite this obligation, from the period of January 1, 2017 through December 31, 2019, Samuel Grossi & Sons made no contributions. *Id.* ¶ 19. Patrick H. Reid, a certified public accountant, calculated the total sum of delinquent contributions for this period. Reid Aff., Dkt. 8-3. He sought to conduct a review of the outstanding obligations, but

Samuel Grossi & Sons ignored his requests. *Id.* ¶ 5. Without a review of Samuel Grossi & Sons' books and records, Reid relied on the employer's reported hours for the same bargaining unit of employees to a sister pension plan. *Id.* ¶ 7. Reid then multiplied the number of reported hours for the relevant period by the amount Samuel Grossi & Sons was obligated to pay for each period. *Id.* ¶ 8. Thus, he calculated that the total principal amount to which the plaintiffs are entitled is $493,430.68. *Id.*

In addition to the unpaid contributions, the plaintiffs seek attorney's fees and costs. ERISA directs that a court "shall award the plan" "reasonable attorney's fees and costs of the action" when "a judgment in favor of the plan is awarded." 29 U.S.C. § 1132(g)(2). "When awarding attorneys' fees, federal courts have a duty to ensure that claims for attorneys' fees are reasonable." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993). And in general, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the plaintiffs request $12,425 in attorney's fees, in addition to $1,014.60 in additional legal costs. However, the plaintiffs have failed to provide any explanation for this amount. They have provided neither the number of hours billed nor the hourly rate that this amount reflects. "The usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel & Rest. Employees Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). Where the plaintiff has provided neither the number of hours worked nor the hourly fee charged, the Court is unable to determine whether the hours expended, the hourly rate, or the ultimate sum requested is *reasonable*, as required by ERISA. *See* 29 U.S.C. § 1132(g)(2) (stating that the Court shall provide "reasonable attorney's fees and costs of the action").

*Compare Boland v. Hetrick*, 277 F. Supp. 3d 112, 121 (D.D.C. 2017) (noting that the plaintiffs provided multiple declarations and "an attorney's fees chart that provides a summary of the tasks performed, the hours spent on each task, and who performed each task").  In addition to contemporaneous billing records, the plaintiffs should provide an affidavit which explains "the extent of each biller's legal experience in order to inform a comparison to the prevailing market rates," and "additional evidence of prevailing market rates such as the Laffey Matrix or the U.S. Attorney's Office Matrix, which the D.C. Circuit has 'previously said litigants may rely upon when seeking fees.'"  *Serv. Employees Int'l Nat'l Indus. Pension Fund v. Tandem Dev. Grp.*, LLC, 274 F. Supp. 3d 1, 6 (D.D.C. 2017) (quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004)).  "Absent such information, the Court cannot determine at this time whether the proposed hourly rates are reasonable."  *Id.*  Thus, the Court is unable to grant attorney's fees and costs at this time.  However, the Court will grant the accounting fee, which has been supported by an affidavit.  *See* Reid Aff. ¶ 11.

      Finally, the plaintiffs also seek equitable relief in the form of an order "compelling Samuel Grossi to submit their books, records and the outstanding fringe benefit reports for the period of January 1, 2020, thru [sic] the present for review and copying within ten (10) days from the date of the order so that Plaintiffs can determine if there are additional outstanding contributions and damages owed."  Pls.' Mem. in Supp. at 4.  Samuel Grossi & Sons is required to submit to an examination of its books and records pursuant to its agreement with the plaintiffs.  *See* Compl., Exh. D (Amended and Restated Agreement and Declaration of Trust) § 9.04, Dkt. 8-7 ("The Trustees shall have the authority to audit the payroll books and records of a Participating Employer, either directly or through a qualified public accountant, as they may deem necessary in the administration of the Trust Fund."); *id.* ("[T]he Participating Employer involved shall

make available . . . its payroll books and records."). The agreement further specifies that: "[s]uch books and records shall include: (a) all records which the Participating Employer may be required to maintain under Section 209(a)(1) of ERISA, and (b) time cards, payroll journals, payroll check registers, cancelled payroll checks, copies of the employer's federal, state, and local payroll tax reports, and all other documents and reports that reflect the hours and wages, or other compensation, of the employees or from which such can be verified." *Id.* The plaintiffs allege that they need to audit Samuel Grossi & Sons' books and records to determine the amount of delinquent funds owed for the period beginning on January 1, 2020.

Section 502 authorizes the Court to grant "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). "This provision allows the court to construct appropriate remedies which may include an injunction requiring a defendant to permit, and cooperate with, an audit of its books and records." *Carpenters*, 498 F. Supp. 2d at 242 (internal quotation marks omitted). This equitable relief is often awarded when the defendant "has demonstrated no willingness to comply with either its contractual or statutory obligations or to participate in the judicial process." *Id.* (citing *Int'l Painters & Allied Trades Industry Pension Fund v. Newburgh*, 468 F. Supp. 2d 215, 218 (D.D.C. 2007)). Given Samuel Grossi & Sons' default, as well as the underlying facts of this case, Samuel Grossi & Sons' has neither participated in the judicial process nor complied with statutory or contractual obligations. The audit of its books and records, as described in the agreement between the parties, is therefore necessary to make an accounting of Samuel Grossi & Sons' outstanding contributions. Thus, pursuant to the Court's discretionary authority under Section 502 of ERISA, the Court will grant the equitable relief requested by the plaintiffs. *See Boland v. Yoccabel Const. Co.*, 293 F.R.D. 13, 20–21 (D.D.C. 2013) (granting the plaintiffs' request that the "defendant be directed to

comply with its obligations to submit all required reports and to make all contributions due" because the request reiterates the defendant's existing contractual obligations and because the defendant persistently breached these obligations).

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for partial default judgment is granted. A separate order consistent with this decision accompanies this memorandum opinion.

                                                                                                                  _____
                                                                                                                  DABNEY L. FRIEDRICH
                                                                                                                  United States District Judge

November 12, 2020